# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA BERGMAN,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION LONG TERM DISABILITY PLAN, *et al.*,<br><br>        Defendants. | Case No. 16-cv-1179-BAS(KSC)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DAMAGES**<br><br>**[ECF No. 21]** |

  Presently before the Court is Plaintiff Brenda Bergman's motion for damages. (ECF No. 21). Previously, the Court granted Bergman's motion for summary judgment and requested further briefing on the issue of damages. (Order, ECF No. 33.) In its previous Order, the Court found that Defendant Federal Express Long Term Disability Plan ("FedEx") and Defendant Aetna Life Insurance Company ("Aetna") (collectively, "Defendants") violated the Employee Retirement Income Security Act ("ERISA") when they terminated Bergman's long term disability ("LTD") benefits under the LTD plan provided to her as an employee of FedEx. (*See*

*id.*); *see also* 29 U.S.C. §§ 1001-1461. The parties submitted briefing on the issue of damages and argued this issue to the Court on June 20, 2018.

For the foregoing reasons, the Court **GRANTS IN PART** Bergman's motion for damages.

I.  BACKGROUND

Briefly, Bergman began working for FedEx over thirty years ago in 1984, and until April 2015 she was employed as a Senior Service Agent. As an employee of FedEx, she was covered under FedEx's LTD plan, which is governed by ERISA. 29 U.S.C. §§ 1001-1461; (Order at 2.) Bergman started to receive LTD benefits on November 10, 2014 for an Occupational Disability,[1] but her LTD benefits were terminated on December 31, 2014. (*Id.*) For the LTD plan, FedEx served as the plan administrator, and Aetna served as the third party claims paying administrator. On June 2, 2015, Bergman received notice that her appeal of the termination was denied. Bergman commenced this action with the Court on May 16, 2016. On September 27, 2017, the Court granted Bergman's motion for summary judgment and denied Defendants' cross motion for summary judgment. (*Id.*) Bergman filed the instant motion for damages on December 20, 2017, and Defendants opposed the motion. (ECF Nos. 38, 39.) The Court held a hearing on the motion for damages on June 20, 2018.

II. DISCUSSION

As an initial matter, the parties agree that Aetna has only determined that Bergman has an Occupational Disability, and that Aetna must determine in the first

---

[1] "Occupational Disability" is defined as "the inability of a Covered Employee, because of a medically-determined physical or functional impairment . . . to perform the duties of his regular occupation" (AR 555-56), and "Total Disability" is "the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment . . . to engage in any compensable employment for twenty-five hours per week" (AR 559).

instance whether Bergman has a Total Disability. (*See* Reply, ECF No. 40, at 1.) Accordingly, the Court **REMANDS** Bergman's case to Aetna to determine whether Bergman has or had a Total Disability, beginning on November 11, 2016.[2]

The parties request that the Court make several determinations relating to damages. Bergman requests the LTD benefits that she would have received if Aetna had not terminated her benefits for her Occupational Disability, a return of the early retirement benefits she received, and attorney fees and costs. Defendants argue that Bergman is not entitled to any benefits under the LTD plan because the LTD benefits are completely offset by her retirement benefits, which the Court should not reinstate. Defendants also contend that, even if the Court finds that Bergman is entitled to some benefits for her Occupational Disability, Aetna should determine this amount, not the Court.[3] Further, Defendants argues that Bergman's attorney fees request is unreasonable.

The Court must first determine whether it can award Bergman relief under ERISA. ERISA is clear that a court has the authority to award equitable relief when a party violates the ERISA statute. *See* 28 U.S.C.A. § 1132(a)(3)(B)(i) ("A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate equitable relief (i) to redress such violations [of this statute] . . ."). In its previous Order, the Court determined Defendants violated ERISA when Aetna terminated Bergman's LTD Benefits. (Order at 21.) Accordingly, the Court may award Bergman equitable relief in the amount of LTD benefits that she should have received under the LTD plan for an Occupational Disability, and does not remand this determination to Aetna.

---

[2] As discussed at the hearing, Aetna will also make any other determinations as necessary, such as whether Bergman is temporarily or permanently disabled. If determined to have a temporary Total Disability, under the LTD plan, Bergman can collect benefits at a rate of $83.65 per day until she turns sixty-five in April 2026, or until her disability ends. If her disability is permanent, she can receive a lump sum for a permanent Total Disability. (*See* AR 557 § 1.1(z); AR 569 § 3.3(c).)
[3] This argument does not appear in Defendants' briefing. Rather, Defendants made this argument for the first time in court at the hearing.

The Court does recognize that it is providing an approximate amount for damages that should serve as a general guideline to the parties for how damages should be calculated under the LTD plan. (*See* AR-567, 576-77 (providing how to award damages under Sections 3.2(a) and 3.6(a)).) As discussed at the hearing, both parties failed to properly calculate Bergman's damages on a monthly basis as required by the LDT plan, and thus, the Court had to perform its own calculations for the purposes of damages. The parties may reasonably adjust the amount awarded to Bergman in this Order if needed to accurately reflect the exact amounts of offsetting monthly benefits Bergman received.

### A. LTD Benefits

Turning to the damages owed for Bergman's Occupational Disability, Bergman seeks LTD benefits from January 1, 2015 to November 10, 2016 to receive the maximum two years of LTD benefits allowed under the LTD plan.[4] (*See* AR 567 § 3.3(b)(3) (The Disability Benefit shall cease . . . after 24 months of Disability Benefit eligibility . . . for an Occupational Disability).) The parties agree that the maximum LTD benefits Bergman can receive is $55,962.30. (*See* Ex. 38 at Ex. 1.) The parties disagree about whether this amount is completely offset by other qualifying benefits.

As discussed above, the Court finds that ERISA expressly permits the Court to award Bergman damages for Defendants' ERISA violation. *See* 28 U.S.C.A. § 1132(a)(3)(B)(i). The Court agrees with the parties, and awards Bergman her remaining benefits for the Occupational Disability of $55,962.30, offset by any other qualifying amounts. This finding of Bergman's continued eligibility for benefits is supported in part by Bergman's declaration of her continuing disability, including

---

[4] Bergman received short term disability benefits under FedEx's Short Term Disability Plan from May 12, 2014 to November 9, 2014. (Order at 2; AR 001, 4.) Bergman also received long term disability benefits from November 10, 2014 to December 31, 2014 before FedEx terminated her benefits. (*Id.*)

that she remains under the care of a physician. (Decl. of Bergman, ECF No. 38-2.) Additionally, the Court considered the Social Security Administration's determination that Bergman was eligible for Social Security Disability Insurance ("SSDI") benefits on April 5, 2016. (ECF No. 26-2.) Therefore, Bergman maintained proof of her disability as required under the LTD plan during the relevant time period.

Next, the Court must determine whether and by how much Bergman's LTD benefits are offset by other benefits she received. Both parties agree that from January 1, 2015 to November 10, 2016, Bergman received offsetting benefits from workers compensation and SSDI. (*See* Mot., ECF No. 38, at Ex. 1). In their briefing, both parties presented Bergman's offsetting benefits in lump sums from January 1, 2015 to November 10, 2016, determining that Bergman should receive net LTD benefits of $22,555.94 for that time period (excluding retirement benefits). (*See id.*)

However, a plain language reading of Sections 3.2(a) and 3.6(a) show that Bergman's monthly benefits should be offset monthly, rather than in lump sums. (AR 565 ("[Section 3.2(a):] Subject to any applicable reduction for Other Income as provided in Section 3.6, a *monthly* Disability Benefit for a Covered Employee shall be payable to a Disabled Covered Employee equal to 60% of his Basic Monthly Compensation.") (emphasis added); AR 576-77 ("[Section 3.6(a): Benefits] shall be reduced by the sum of the following benefits to which such Employee is entitled to receive *with respect to the same period and condition of Disability* for which a Disability Benefit is payable under this Plan.") (emphasis added).) This interpretation is also supported by Section 3.6(b), which converts lump sum payments into monthly amounts for the purposes of offsets. (AR-580.) When the Court raised offsetting the benefits monthly instead of by lump sums at the hearing, the parties agreed with the Court that the LTD plan requires monthly offsets, rather than lump sum offsets. Further, under Section 3.6(b) of the LTD plan, a lump sum payment of SSDI would not be converted into monthly offsets, but instead applied the month it is received. (*See* AR-580 (excluding "lump sum payment[s] payable under the Federal Social

Security Act" from the Lump Sum Payments section.) The parties concede that Bergman received her SSDI benefits in a lump sum payment (Mot. at Ex. 1 ("SSDI benefit for period of October-December 2016 was paid as lump sum."), and, upon further review of Bergman's SSDI notice, it appears this lump sum was paid in January 2017. (*See* ECF No. 26-2 at 1 ("You will receive $3,162.00 around January 24, 2017.")) Because Bergman did not receive the SSDI lump sum during the relevant time period, the Court did not apply an SSDI offset.

The Court calculates the net total LTD benefits owed to Bergman to be $29,138.41 (excluding any retirement offsets). The Court calculated this amount as follows: based on the parties' representations, Bergman could receive a maximum LTD benefit of $2,509.92 per month, except for November 2016 where she could only receive a partial month benefit of $836.50. (Mot. at Ex. 1.) The Court reasonably offsets these monthly benefits with the following offsets: (1) January 2015 is offset by Temporary Partial Workers Compensation in the amount of $2,235.44, calculated by applying a daily rate from the lump sum of $4,619.91 starting on January 2; (2) February 2015 is offset by Temporary Partial Workers Compensation in the amount of $2,086.41, calculated by applying the daily rate for the month; (3) March 2015 is offset completely by Temporary Partial Workers Compensation in the amount of $298.06, calculated by applying the daily rate for March 1-4, and by Workers Compensation in the amount of $3,041.92 by applying the stated monthly rate; (4) April 2015 to November 2015 are offset completely by Workers Compensation in the amount of $3,041.92 by applying the stated monthly rate; and (5) December 2015 to November 2016 are not offset because Bergman did not receive any offsetting benefits. (*See id.*) Therefore, Bergman should receive $274.08 for January 2015; $423.11 for February 2015; no amount for March 2015 to November 2015; $2,509.52 a month for December 2015 to October 2016; and $836.50 for November 2016. This amounts to $29,138.41 in LTD Benefits owed to Bergman.

Lastly, Defendants argues that the LTD benefits should be offset further by Bergman's decision to retire because she received additional offsetting benefits from her pension plan.[5] By retiring early in April 2016, Bergman received a pension lump sum of $47,723.23, paid on July 1, 2016, and also began to receive a monthly annuity of $1,624.11 per month for a total of $28,422.00 as of December 15, 2017. (*See* Mot. at 3, n.2; Decl. of Bergman, ¶ 6.) Under Section 3.6(b), lump sum payments "shall be converted into monthly amounts which shall reduce the amount" owed under the LTD plan. (AR 580 (exempting only lump sum payments under the Federal Social Security Act).) Therefore, under Defendants' argument, Bergman received an additional $1,988.47 offset per month from November 11, 2014 to June 30, 2016 to account for the pension lump sum and $3,612.58 offset per month from July 1, 2016 to November 10, 2016 for both the pension lump sum and the annuity.

Bergman argues that her pension benefits should not offset her LTD Benefits because these funds should be returned to her after the Court's finding that Defendants wrongfully terminated her LTD benefits.[6] Bergman states that she was forced to retire early because, if Defendants had not terminated her benefits, Bergman never would have retired.[7] This evidence appears sufficient, and Defendants do not

---

[5] For the first time at the hearing, Defendants argued that, under the LTD plan, Bergman's LTD benefits should be offset by her retirement benefits even if she did not retire early. Defendants cite to section 3.6(a) of the LTD plan to support their argument. However, the plain language of section 3.6(a) does not support this interpretation, nor were Bergman's STD or LTD benefits previously offset in such a manner. The relevant part of section 3.6(a) states that LTD benefits must be reduced by the other benefits that the employee could have received "even though the Disabled Covered Employee . . . shall have refused or failed to apply for such benefits within the time, or in the manner, required by such law, policy, plan or arrangement." (AR-576-77.) No section in the LTD plan "require[s]" Bergman to take her retirement benefits early, nor does any section support the interpretation that an employee not retiring early means that employee "refused or failed to apply" for their retirement benefits. Moreover, Defendants do not point to any other "law, policy, plan or arrangement" to support their interpretation, especially in light of awarding Bergman's LTD benefits in a manner contrary to their new position. Instead, this argument appears to be a poorly reasoned, last ditch effort to avoid paying the benefits Defendants owe a long time employee.

[6] The parties agree that, under the Plan, any retirement funds Bergman received would offset her LDT benefits.

[7] Specifically, Bergman's declaration states "Prior to becoming disabled, I had no intention of retiring early. I would have continued to work until my full retirement

provide any evidence contradicting this finding.[8] Therefore, the Court finds that Bergman was forced to retire early due to the wrongful termination of her benefits, and, as a part of equitable relief, reverses Bergman's early retirement. Accordingly, the Court **ORDERS** Bergman to repay the lump sum she received from her pension and any additional retirement benefits back in to FedEx's retirement plan in the amount of $85,077.76 (plus any additional annuities)[9] to reinstate her pension benefits. Additionally, because Bergman is "returning" these retirement benefits, her LTD benefits are not offset any further, and the Court **ORDERS** Defendants to pay Bergman $29,138.41 in LTD benefits.

### B. Attorney Fees

Under ERISA, the Court may award reasonable attorney fees and costs. *See* 28 U.S.C. § 1132(g)(1) ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party."); *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1136 (9th Cir. 1996) (stating that an ERISA participant "is ordinarily entitled to a reasonable attorney's fee if that participant succeeds on any significant issue in litigation which achieves some of the benefit sought in bringing suit"). In determining whether to award fees, a court usually considers various factors outlined in *Hummel v. S.E. Rykoff & Co*. 634 F.2d 446, 453 (9th Cir. 1980). However, when it is "evident from the [district court's] order" that an ERISA participant has prevailed, "it is unnecessary for the [district] court to engage in a discussion of the factors enumerated

---

age of sixty-five. I was forced to retire early because I needed the pension money to live on. Had Federal Express not cut off my long-term disability benefits, I would not have taken an early retirement." (Decl. of Bergman, ¶ 7.)

[8] "In the ERISA context, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" *Harlick v. Blue Shield of Cal.*, 656 F.3d 832, 838-39 (9th Cir. 2011) (quoting *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) (internal quotation marks and citation omitted)).

[9] In addition to the lump sum payment of $47,723.23, it appears Bergman has received $1,624.11 per month in annuity payments since July 1, 2016 for a total additional amount of $37,354.53. (Mot. at 3 n.2.) Based on these payments, the Court calculates that Bergman received $85,077.76 in retirement benefits to date.

in *Hummell.*" *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001) (quoting *Nelson v. EG & G Energy Measurements Grp.*, 37 F.3d 1384 (9th Cir. 1994)).

Bergman requests attorney fees for the motion for summary judgment and related motion for damages. (Mot.) Defendants do not argue against awarding fees, but instead asks for a reduction in the requested fees. (Opp'n, ECF No. 39, at 8.) Given Bergman prevailed in the summary judgment order, the Court finds that awarding reasonable attorney fees and costs is warranted. *See Grosz-Salomon*, 237 F.3d at 1164; *McElwaine*, 176 F.3d at 1172 ("[A] successful ERISA participant 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" (quoting *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984))).

Bergman requests $59,205.00 in attorney fees plus $581.00 in statutory costs. (*See* Reply at 5.) This fee request represents 123.7 hours at a rate of $450.00 per hour from three senior attorneys, though almost all of the hours are completed by two senior attorneys with thirty-five years and twenty-nine years of practice each. (*See* Decl. of B. Iler, ECF No. 38-3; Invoices, ECF No. 38-4; Supp. Decl. of B. Iler, ECF No. 40-1.) This request also includes 24.0 hours at a rate of $125.00 per hour from a paralegal and 7.2 hours at a rate of $75.00 per hour from an office administrator. (*Id.*) To support her request, Bergman submits detailed time sheets from her attorneys and supporting staff where each task is billed out to the one tenth of an hour. (*See id.*)

Defendants argue that Bergman's fee request is not reasonable because the rate charged by Bergman's attorneys is unreasonably high and because the requested amount of hours is excessive. (Opp'n at 8-10.) They state that Bergman has not met her burden of showing that the hourly rate is reasonable because she only provides a declaration from her attorney regarding his expertise as well as his colleagues' experience. Defendants also contend that Bergman's attorneys' time sheet include "duplicative tasks, improper and unnecessary billing, and excessive time." (*Id.* at 9.)

Generally, the court should defer to the winning lawyer's professional judgment as to how much time was required for the case. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[A]fter all he [or she] won, and might not have, had he [or she] been more of a slacker."). To determine a reasonable attorney fees award, the district court applies a "two-step hybrid lodestar/multiplier approach" to determine reasonable attorney fees. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). "First the court establishes a lodestar by multiplying the number of hours reasonably expended on this litigation by a reasonable hourly rate." *Id.* Typically, the lodestar is the reasonable fee amount, though a multiplier may then be applied to increase or decrease the lodestar.[10] "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985).

After reviewing Bergman's request and related time sheets, the Court finds that Bergman's attorney fees and costs request is reasonable. Other courts have awarded similar or more substantial awards in ERISA cases, using similar hourly rates to calculate these awards (especially considering that many of these cases were resolved seven to nine years ago and the hourly rate has likely increased since that time). *See, e.g.*, *Nash v. Life Ins. Co. of N. Am.*, No. 08CV893-WQH-RBB, 2011 WL 2493738, at *4 (S.D. Cal. June 22, 2011) (awarding $409,847.75 in fees for over 900 billable hours with attorneys' rates ranging from $375-$425 per hour); *Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS(NLS), 2010 WL 1912867, at *4 (S.D. Cal. Apr. 21, 2010) (reducing requested rates of $500 per hour to $425 and $400 per hour, but noting that the higher rate was unreasonable in an economy still recovering from the 2008 financial crisis); *Patrick v. Hewlett-Packard Co. Employee*

---

[10] Bergman does not request a multiplier, and therefore the Court does not address this issue.

*Benefits Org. Income Prot. Plan*, No. 06-CV-1506-JMA (MCC), 2009 WL 10672184, at *3 (S.D. Cal. Sept. 14, 2009) (finding $450 per hour rate was reasonable for attorneys with twenty and twenty-one years of experience). Moreover, the United States Attorney Office's attorney's fees matrix states the applicable rates of attorneys in this case range from $543-602 per hour. *See* USAO Attorney's Fees Matrix, 2015-2018 (setting hourly rates for 2016-17 and 2017-18 as $543-$563 for attorneys with 21-30 years of experience and $581-$602 for attorneys with over 31 years of experience).

The number of hours expended by Bergman's attorneys and supporting staff to litigate this case is also reasonable. This matter was fairly complicated with an administrative record of over 600 pages, briefing for the MSJ and cross MSJ response amounting to forty-three pages and involving a complicated ERISA legal issue, and additional negotiation and briefing for the damages motion. The Court will make some minor reductions to account for the errors in billing raised by Defendants. Defendants do not identify the specific entries they contest, except for one,[11] so the Court identifies four entries on the attorneys' invoice relating to filing court documents that appear to be duplicative or clerical. (Invoices, ECF No. 38-4 (identifying filing tasks on May 16, 2016, May 24, 2106, April 24, 2017, and October 12, 2017, totaling 1.85 hours).) The Court also could not identify which tasks on the office administrator's invoice that Defendants contend relate to "uploading documents and receiving documents," but nonetheless the Court finds that reducing these hours by two hours to account for non-billable clerical work appears warranted. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Therefore, the Court will award Bergman attorney fees for 121.85 hours of attorney time at an hourly rate of $450.00, 24.00 hours of paralegal time at an hourly rate of $125.00, and 5.2 hours

---

[11] Defendants contest an entry relating to the motion for damages in October 2017. (Opp'n at 10.) In her reply, Bergman explains that the October 2017 damages motion entry relates to the parties' joint motion to continue the briefing schedule, which was filed on October 12, 2017 (ECF No. 34), and not the actual motion for damages. (Reply at 5.)

of administrator time at an hourly rate of $75.00. Lastly, the request for $581.00 for statutory costs is reasonable.

Therefore, the Court **AWARDS** Bergman $58,222.50 in attorney fees plus $581.00 in statutory costs.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Bergman's motion for damages. Specifically, the Court:

    (1)    **REMANDS** the determination of whether Bergman has a Total Disability to Aetna's reviewing board;

    (2)    **ORDERS** Defendants to pay Bergman LTD Benefits for her Occupational Disability in the amount of $55,962.30 less any qualifying offsets, which the Court calculates to be a total amount of approximately $29,138.41;

    (3)    **ORDERS** Bergman to repay Defendants the amount she received for her pension lump sum and any monthly annuities, which the Court calculates to be a total amount of approximately $85,077.76;

    (4)    **ORDERS** Defendants to reinstate Bergman's pension plan and other retirement benefits once she repays the amount outlined above; and

    (5)    **AWARDS** Bergman attorney fees in the amount of $58,222.50 and $581.00 in statutory costs.

**IT IS SO ORDERED.**

**DATED: June 25, 2018**

Hon. Cynthia Bashant
United States District Judge